

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JAMES R. WHITAKER | § | Case No. 10-40122 |
| | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| MORONEY FARMS HOMEOWNERS | § | |
| ASSOCIATION, INC. | § | |
| | § | |
| Plaintiff | § | |
| v. | § | Adversary No. 10-4057 |
| | § | |
| JAMES R. WHITAKER | § | |
| | § | |
| Defendant | § | |

## REVISED FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

Upon trial of the complaint in the above-referenced adversary proceeding and

reconsideration of certain issues required upon remand, the Court issues the following

revised findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, as

incorporated into adversary proceedings in bankruptcy cases by Fed. R. Bankr. P. 7052.

### *FINDINGS OF FACT*

1.  The complaint seeks a determination of the dischargeability of the debt owing by
    the Debtor-Defendant, James R. Whitaker ("Defendant"), to the Plaintiff, Moroney
    Farms Homeowners Association, Inc. ("Plaintiff" or the "HOA").

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not
be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion,
the law of the case or as to other applicable evidentiary doctrines.

2.      The Plaintiff is a Texas non-profit corporation for which the Defendant once served as an officer (president) and director from January 2006 to July 2007.

3.      Subsequent to his service as an officer and director, the Defendant was sued by the Plaintiff in a lawsuit (the "State Court Litigation") that was tried by these parties before the 296th Judicial District Court of Collin County, Texas (the "State Court").

4.      The state court petition alleged that the Plaintiff suffered damages caused by the Defendant's breach of his fiduciary duties owed to the Plaintiff as its president and as a director.[2]

5.      Specifically, the petition alleged, among other things, that the Defendant improperly caused the HOA to incur attorney's fees in an improper effort to deny a homeowner access to certain documents of the HOA.

6.      The Plaintiff contended in the State Court Litigation that such homeowner was entitled to receive the requested documents under Section 6.4 of the HOA bylaws.[3]

7.      The Plaintiff further asserted in the State Court Litigation that the Defendant was liable for his actions as breaches of his fiduciary duty to the HOA as contemplated by Article 11 of the HOA's Articles of Incorporation.[4]

8.      As a corporate officer, the Defendant had a formal fiduciary relationship with the HOA during the relevant time periods.

9.      The state court trial between the Plaintiff and the Defendant began on June 22, 2009, and concluded on June 24, 2009. The state court conducted a full evidentiary trial with consideration of all evidence in favor of the Plaintiff as well as the evidence supporting the defenses of the Defendant.

10.     Upon its trial of the issues, the 296th Judicial District Court entered judgment for the Plaintiff and against the Defendant on September 4, 2009 in the amount of $30,177.00, with post-judgment interest thereon at the rate of 5% per annum along

---

[2] Claims were asserted against other officers and directors that served with the Defendant. Those claims were settled prior to trial in the state court.

[3] Ex. C.

[4] Ex. 4

with all costs taxed to the Defendant (the "State Court Judgment").[5]

11.   On October 27, 2009, the 296th Judicial District Court entered formal findings of fact and conclusions of law in support of the State Court Judgment in which it specifically found that:

(a)   Defendant was the president and director of the Plaintiff from January 2006 through July 2007;

(b)   As president and director of the Plaintiff, the Defendant knowingly and intentionally incurred attorney's fees, and litigation and settlement expenses, on behalf of the Plaintiff to oppose a homeowner's request for association documents;

(c)   The homeowner's request for association documents was proper;

(d)   The amount of attorney's fees and litigation expenses approved and incurred by the Defendant on behalf of the Moroney Farms Homeowners' Association to oppose the homeowner's request for association documents was $27,873.83;

(e)   The Defendant knowingly sought and received personal benefits as a president and director of the Moroney Farms Homeowners' Association;

(f)   The Defendant knowingly sought and received money as a personal benefit from a third-party contractor that was performing work paid for by the Moroney Farms Homeowners' Association;

(g)   The value of the money received by the Defendant as a personal benefit from a third party contractor that was performing work paid for by the Moroney Farms Homeowners' Association was $470.00;

(h)   The Defendant knowingly sought and received money from the Moroney Farms Homeowners' Association for reimbursement of personal expenses incurred solely by the Defendant;

(i)   The value of the money received by the Defendant from the Moroney Farms Homeowners' Association for the reimbursement of personal expenses of Defendant was $272.21;

---

[5] Ex. 2.

(j)     The total value of the personal benefit received by the Defendant as president and director of the Moroney Farms Homeowners' Association was $742.21;

(k)     The Defendant gave no notice of and made no claim for any settlement offset or credit before or during the trial and offered no evidence prior to the close of evidence of any payment of settlement funds to the Plaintiff;

(l)     As president and director of the HOA, the Defendant owed the HOA the duties of a fiduciary;

(m)     Defendant breached his fiduciary duty owed to the HOA;

(n)     Defendant's action in knowingly incurring attorney's fees, and litigation and settlement expenses, on behalf of the HOA to oppose a homeowner's proper request for association documents was a breach of his fiduciary duty;

(o)     Defendant breached his fiduciary duty owed to the HOA by knowingly taking improper personal benefits arising out of his position as president and a fiduciary;

(p)     Defendant's personal receipt of money from a third-party contractor for work performed for and paid for by the association was a breach of Defendant's fiduciary duty to the HOA;

(q)     Defendant's personal receipt of money from the association as reimbursement of Defendant's personal expenses was a breach of Defendant's fiduciary duty to the HOA;

(r)     Defendant was not entitled to any settlement credit or offset;

(s)     Defendant's indebtedness to the HOA included pre-judgment interest in the amount of $1,560.96 calculated at the rate of 5% per annum.[6]

12.     The issues as determined by the 296th Judicial District Court in the State Court Litigation were essential to that court's judgment.

13.     All of the issues as determined by the 296th Judicial District Court were fully and

---

[6] Ex. 3.

fairly litigated in the State Court Litigation.

14.   The State Court Judgment states that "the court heard and accepted testimony and evidence as to Plaintiff's cause of action for breach of fiduciary duty and Defendant's defenses thereto . . . [and] after careful consideration based upon a preponderance of the admissible testimony and evidence introduced before the court, the court finds that Defendant breached his fiduciary duty owed to Plaintiff."[7]

15.   The parties in this adversary case are identical to those in the State Court Litigation.

16.   The Defendant filed his petition for relief under Chapter 7 of the United States Bankruptcy Code on January 12, 2010.

17.   The Plaintiff timely filed its Complaint Objecting to the Discharge of a Debt on March 8, 2010, seeking to except its claim arising from the State Court Judgment from the scope of any discharge granted to the Defendant.

18.   On August 23, 2012, this Court conducted a trial on the Complaint and, upon its conclusion, took the matter under advisement.

19.   On September 11, 2012, supported by oral findings of fact and conclusions of law issued on the record, this Court entered a judgment that determined that the debt owed by the Defendant to the Plaintiff, in the original amount of $30,177.00, plus post-judgment interest and court costs, as evidenced by the State Court Judgment issued by the 296th Judicial District Court in and for Collin County, Texas, should be declared nondischargeable as a defalcation committed by the Defendant while acting in a fiduciary capacity pursuant to 11 U.S.C. §523(a)(4).

20.   The Defendant timely appealed this Court's judgment to the United States District Court for the Eastern District of Texas.

21.   While the matter was on appeal, the United States Supreme Court issued a ruling in *Bullock v. BankChampaign, N.A.*, ___U.S.___, 133 S.Ct. 1754, 185 L.Ed.2d 922 (2013), on May 13, 2013, which clarified the level of culpability required to find the existence of a "defalcation" for the purposes of 11 U.S.C. §523(a)(4).

---

[7] Ex. 2.

22.     On September 29, 2013, the District Court entered an order that remanded this adversary proceeding back to this Court "to apply the heightened standard set forth in *Bullock*." (the "Remand Order").[8]

23.     Upon subsequently learning of the entry of the Remand Order, this Court entered an order on April 24, 2014, allowing additional written submissions by the parties regarding the impact of *Bullock*.  The parties filed responsive submissions.

24.     The Plaintiff still maintains that the Defendant is precluded from challenging the legitimacy of its claim arising from the State Court Judgment through the principles of collateral estoppel and that, notwithstanding the clarification regarding the scope of defalcation under *Bullock*, its claim should remain non-dischargeable as a defalcation by a fiduciary under 11 U.S.C. §523(a)(4).

25.     The vast majority of the factual and/or legal issues raised by the Defendant in his defense before this Court were, or should have been, presented in the State Court Litigation for determination.  The presentation of such issues constitute an impermissible collateral attack upon the determinations arising from the State Court Litigation.  *Browning v. Prostock*, 165 S.W.3d 336, 346 (Tex. 2005); *Union Planters Bank Nat. Ass'n v. Salih,* 369 F.3d 457, 462 (5th Cir. 2004).  These include, but are not limited to:

   (a)     whether board approval of the fees and other payments by the HOA constituted a proper ratification of Defendant's actions;

   (b)     the impact of the restriction that corporations must appear in court through licensed counsel;

   (c)     whether a purported settlement was binding after only $5,500 in attorney's fees had been incurred;

   (d)     the efforts of the Defendant to limit accrued expenses of the HOA;

   (e)     the propriety of reducing the award to the HOA based upon settlement credits arising from settlements with other officers/directors;

   (f)     the significance of the fact that the Defendant received no compensation for

---

[8]   Though entered on September 29, 2013, the entry of such remand order was never actually sent nor otherwise communicated to the Bankruptcy Court.

his position with the HOA;

(g)    the propriety of the Defendant's actions in incurring the attorney's fees that the HOA was forced to pay; and

(h)    any impact of Defendant's contention that he acted only upon advice of counsel.

26.    In response to the Remand Order, the Defendant moved the Court to take judicial notice of certain provisions of the Texas Non-Profit Corporation Act and the Declaration of Covenants, Conditions and Restrictions for Moroney Farms Homeowners Association, Inc. as filed in the Real Property records of Collin County, Texas.

27.    While this Court generally possesses the discretion to take judicial notice of filed public documents under Fed. R. Evid. 201, *Funk v. Stryker*, 631 F.3d 777, 783 (5th Cir. 2011); *Lewis v. Wells Fargo Bank, N.A.*, 939 F.Supp.2d 634, 637 n.3 (N.D. Tex. 2013); *Merced Irrigation Dist. v. Cnty. of Mariposa*, 941 F.Supp.2d 1237, 1261-62 (E.D. Cal. 2013) and cases cited therein; the Defendant seeks recognition of those documents in order to challenge his status as a fiduciary, and thereby to attack the validity of the State Court Judgment issued in the underlying State Court Litigation.

28.    However, the issue of whether the Defendant acted in a fiduciary capacity is outside the scope of the singular issue upon which the District Court remanded this case for further consideration — whether the Defendant's actions constituted defalcations under the revised standard articulated in *Bullock*.

29.    Thus, the Defendant has not been authorized to seek relitigation of issues before this Court which are outside the scope of the remand — i.e., determining the existence of a defalcation under the revised standard. *Harker v. U.S. (In re Harker)*, 357 F.3d 846, 849 (8th Cir. 2003).

30.    However, without reference to the scope of the remand, even if this Court were otherwise inclined to exercise its discretion to take judicial notice of the referenced state statutes and residential covenants, such exercise would serve no useful purpose since consideration of whether the Defendant was acting in a fiduciary capacity in the dispute with the Plaintiff was actually litigated and decided in the affirmative in the State Court Litigation.

31.    The Defendant did not appeal the State Court Judgment and the factual findings

-7-

upon which it is based and, thus, the Defendant (as well as this Court) are now collaterally estopped from disturbing that factual finding.[9]

32. Accordingly, by the entry of separate orders, the Court has denied the Defendant's motions to take judicial notice of the referenced documents.

*Defalcation Under Bullock Standard*[10]

33. The Remand Order directed a review of the factual record, including those factual findings which are precluded from revision under the principles of collateral estoppel, in light of the heightened standard for defalcations under §523(a)(4) as enunciated in *Bullock v. BankChampaign, N.A.*, ___U.S.___, 133 S.Ct. 1754, 185 L.Ed.2d 922 (2013).

34. *Bullock* declared that a "defalcation" for the purposes of §523(a)(4) "includes a culpable state of mind requirement" involving "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Id*. at 1757.

35. According to *Bullock*, "where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] requires an intentional wrong." *Id*. at 1759.

36. The term "intentional wrong" encompasses not only intentional actions but also severe recklessness, such as when a fiduciary "consciously disregards (or is willfully blind to) a substantial and unjustifiable risk" that his conduct will result in a breach of fiduciary duty.  *Id*.

37. The State Court specifically found that, as president and director of the HOA, the Defendant knowingly and intentionally incurred attorney's fees, and litigation and settlement expenses, in the aggregate amount of $27,873.83, on behalf of the HOA in a wrongful attempt to oppose a homeowner's proper request for documents of

---

[9] Whether the existence of that fiduciary duty under Texas law, as found by the State Court, is legally sufficient for recognition as an action taken "in a fiduciary capacity" under the provisions of §523(a)(4) is addressed *infra* in Conclusions of Law ¶¶ 22-37 at pp. 15-18.

[10] See *infra* Conclusions of Law ¶¶ 39-50 at pp. 18-20 for a more specific recitation of the legal standards invoked by the revised definition of "defalcation" adopted by the Supreme Court for the purposes of §523(a)(4).

the HOA.[11]

38.   The Defendant's knowing and intentional act of subjecting the HOA to a substantial financial obligation due to a wrongful effort to oppose a proper request for HOA documents constituted a conscious disregard by the Defendant of a substantial and unjustifiable risk that his actions in that regard would violate his fiduciary duty to the HOA.

39.   The Defendant's knowing and intentional act of subjecting the HOA to a substantial financial obligation due to a wrongful effort to oppose a proper request for HOA documents constituted an extreme departure from the standard of ordinary care to be exercised by a corporate officer under Texas law and a gross deviation from the standard of conduct that a law-abiding person would observe in that circumstance.

40.   The Defendant's knowing and intentional act of subjecting the HOA to a substantial financial obligation due to a wrongful effort to oppose a proper request for HOA documents sufficiently meets the culpable state of mind requirement to establish a defalcation under *Bullock.*

41.   The Defendant's knowing and intentional act of subjecting the HOA to a substantial financial obligation due to a wrongful effort to oppose a proper request for HOA documents constituted a defalcation for the purposes of §523(a)(4).

42.   The State Court specifically found that the Defendant knowingly sought and received $470.00 as an improper personal benefit from a third-party contractor that was paid for its work by the HOA.[12]

43.   The Defendant's action of knowingly seeking and receiving an improper personal benefit from a third-party contractor to the detriment of the HOA constituted a conscious disregard by the Defendant of a substantial and unjustifiable risk that his receipt of such a personal benefit would violate his fiduciary duty to the HOA.

44.   The Defendant's action of knowingly seeking and receiving an improper personal benefit from a third-party contractor to the detriment of the HOA constituted an

---

[11]   See Ex. 3 at Findings of Fact ¶ 2-4 and Conclusion of Law ¶ 3.  Certain conclusions issued by the State Court are actually mixed questions of law and fact which are subject to the principles of collateral estoppel.  See *infra* note 14.

[12]   *Id.* at Findings of Fact ¶ 6-7 and Conclusion of Law ¶ 5.

extreme departure from the standard of ordinary care reasonably expected of a corporate officer under Texas law and a gross deviation from the standard of conduct that a law-abiding person would observe in that circumstance.

45.   The Defendant's action of knowingly seeking and receiving an improper personal benefit from a third-party contractor to the detriment of the HOA in the amount of $470.00 sufficiently meets the culpable state of mind requirement to establish a defalcation under *Bullock*.

46.   The Defendant's action of knowingly seeking and receiving an improper personal benefit in the amount of $470.00 from a third-party contractor constituted a defalcation for the purposes of §523(a)(4).

47.   The State Court specifically found that the Defendant knowingly sought and received $272.21 from the HOA as an improper reimbursement of personal expenses.[13]

48.   The Defendant's action of knowingly seeking and receiving an improper reimbursement of personal expenses from the HOA constituted a conscious disregard by the Defendant of a substantial and unjustifiable risk that his receipt of such an improper reimbursement would violate his fiduciary duty to the HOA.

49.   The Defendant's action of knowingly seeking and receiving an improper reimbursement of personal expenses from the HOA constituted an extreme departure from the standard of ordinary care reasonably expected of a corporate officer under Texas law and a gross deviation from the standard of conduct that a law-abiding person would observe in that circumstance.

50.   The Defendant's action of knowingly seeking and receiving an improper reimbursement of personal expenses from the HOA in the amount of $272.21 sufficiently meets the culpable state of mind requirement to establish a defalcation under *Bullock*.

51.   The Defendant's action of knowingly seeking and receiving an improper reimbursement of personal expenses from the HOA in the amount of $272.21 constituted a defalcation for the purposes of §523(a)(4).

52.   To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

---

[13]   *Id.* at Findings of Fact ¶ 8-9 and Conclusion of Law ¶ 6.

## CONCLUSIONS OF LAW

1.    The Court has jurisdiction to consider the adversary complaint in this proceeding pursuant to 28 U.S.C. §1334 and §157.

2.    This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

3.    In an action to determine the dischargeability of a debt, the creditor has the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

4.    "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 619 (5th Cir. 2011) (citing *Hudson v. Raggio & Raggio, Inc. (In re Hudson)),* 107 F.3d 355, 356 (5th Cir. 1997).

5.    The fact that there is a debt owing by the Defendant to the Plaintiff is established through the factual findings and judgment issued in the State Court Litigation. However, this Court retains exclusive jurisdiction to determine whether that debt is dischargeable. *Grogan v. Garner*, 498 U.S. 279, 285, n.11, (1991); *Fielder v. King (Matter of King),* 103 F.3d 17, 19 (5th Cir. 1997).

*Judicial Notice*

6.    A court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either:  (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b).

7.    "Judicially noticed facts often consist of matters of public record." *Merced Irrigation Dist. v. Cnty. of Mariposa*, 941 F.Supp.2d 1237, 1261-62 (E.D. Cal. 2013) and cases cited therein; *Morlock, LLC v. Bank of America, N.A.*, 2013 WL 5231488, at *2 (S.D. Tex., Sept. 13, 2013).

8.    As one court succinctly described this procedure:

       Judicial notice allows a court to accept certain facts as true

**-11-**

> without requiring additional proof from the opposing parties.
> Judicial notice substitutes the acceptance of a universal truth
> for the conventional way of introducing evidence.  In order
> for a fact to be judicially noticed, indisputability is a
> prerequisite.

*Lopez v. Pastrick*, 2011 WL 2357829, at *4 (N.D. Ind., June 8, 2011).

*Collateral Estoppel*

9.      "Collateral Estoppel or, in modern usage, issue preclusion, 'means simply that
when an issue of ultimate fact has once been determined by a valid and final
judgment, that issue cannot again be litigated between the same parties in any
future lawsuit.'" *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (internal quotations
omitted).

10.     In other words, "once an issue is actually and necessarily determined by a court of
competent jurisdiction, that determination is conclusive in subsequent suits based
on a different cause of action involving a party to the prior litigation." *Montana v.
U. S.*, 440 U.S. 147, 153 (1979) (*citing Parklane Hosiery Co. v. Shore*, 439 U.S.
322, 326 n. 5 (1979)).

11.     "To preclude parties from contesting matters that they have had a full and fair
opportunity to litigate protects their adversaries from the expense and vexation
attending multiple lawsuits, conserves judicial resources, and fosters reliance on
judicial action by minimizing the possibility of inconsistent decisions." *Id.* at 153-
54.

12.     In the bankruptcy dischargeability context, the Fifth Circuit stated in *Fielder v.
King (Matter of King),* 103 F.3d 17, 19 (5th Cir. 1997):

> Issue preclusion will prevent a bankruptcy court from
> determining dischargeability issues for itself only if 'the first
> court has made specific, subordinate, factual findings on the
> identical dischargeability issue in question . . . and the facts
> supporting the court's findings are discernible from that
> court's record.  *Dennis v. Dennis (Matter of Dennis),* 25 F.3d
> 274, 278 (5th Cir. 1994) ["Collateral estoppel applies in
> bankruptcy courts only if, inter alia, the first court has made .
> . . factual findings on the identical dischargeability issue in
> question – that is, an issue which encompasses the same
> prima facie elements as the bankruptcy issue."].

**-12-**

13. Thus, while the doctrine of issue preclusion applies in bankruptcy dischargeability litigation, a bankruptcy court retains exclusive jurisdiction to determine whether a debt is dischargeable. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991).

14. When an issue that forms the basis for the creditor's theory of non-dischargeability has been actually litigated in a prior proceeding, neither the creditor nor the debtor may re-litigate those grounds. *RecoverEdge, L.P. v. Pentecost,* 44 F.3d 1284, 1294 (5th Cir. 1995).

15. As the party asserting the preclusive effect of the findings arising from the State Court Litigation, the Plaintiff has the burden of proof on all elements of collateral estoppel.

16. The inquiry into the preclusive effect of a state court judgment is guided by the full faith and credit statute, which states that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. §1738 (1994).

17. Thus, federal courts look to the principles of issue preclusion utilized by the forum state in which the prior judgment was entered. *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 181 (5th Cir. 1997).

18. Because the State Court Judgment against the Defendant was entered in a Texas state court, this Court applies the Texas law of issue preclusion. *Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997); *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195 (5th Cir. 1996).

19. Under Texas law, a party is collaterally estopped from raising an issue when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case. *Bonniwell v. Beech Aircraft Corp*., 663 S.W.2d 816, 818 (Tex. 1984), *Cannon v. Texas Independent Bank*, 1 S.W.3d 218, 224 (Tex. App. – Texarkana 1999, pet. denied).

20. The decision was rendered on the merits by the 296th Judicial District Court and is now a final judgment. There is no pending appeal of the State Court Judgment.

21. The Defendant is thus barred by the principles of collateral estoppel from re-litigating the following determinations arising from the State Court Litigation:

(a)     Defendant was the president and director of the Plaintiff from January 2006 through July 2007;

(b)     As president and director of the Plaintiff, the Defendant knowingly and intentionally incurred attorney's fees, and litigation and settlement expenses, on behalf of the Plaintiff to oppose a homeowner's request for association documents;

(c)     The homeowner's request for association documents was proper;

(d)     The amount of attorney's fees and litigation expenses approved and incurred by the Defendant on behalf of the Moroney Farms Homeowners' Association to oppose the homeowner's request for association documents was $27,873.83;

(e)     The Defendant knowingly sought and received personal benefits as a president and director of the Moroney Farms Homeowners' Association;

(f)     The Defendant knowingly sought and received money as a personal benefit from a third-party contractor that was performing work paid for by the Moroney Farms Homeowners' Association;

(g)     The value of the money received by the Defendant as a personal benefit from a third party contractor that was performing work paid for by the Moroney Farms Homeowners' Association was $470.00

(h)     The Defendant knowingly sought and received money from the Moroney Farms Homeowners' Association for reimbursement of personal expenses incurred solely by the Defendant;

(i)     The value of the money received by the Defendant from the Moroney Farms Homeowners' Association for the reimbursement of personal expenses of Defendant was $272.21;

(j)     The total value of the personal benefit received by the Defendant as president and director of the Moroney Farms Homeowners' Association was $742.21;

(k)     The Defendant gave no notice of and made no claim for any settlement offset or credit before or during the trial and offered no evidence prior to the close of evidence of any payment of settlement funds to the Plaintiff;

**-14-**

(l)     As president and director of the HOA, the Defendant owed the HOA the duties of a fiduciary;

(m)     Defendant breached his fiduciary duty owed to the HOA;

(n)     Defendant's action of knowingly incurring attorney's fees, and litigation and settlement expenses, on behalf of the HOA to oppose a homeowner's proper request for association documents was a breach of his fiduciary duty;

(o)     Defendant breached his fiduciary duty owed to the HOA by knowingly taking improper personal benefits arising out of his position as president and a fiduciary;

(p)     Defendant's personal receipt of money from a third-party contractor for work performed for and paid for by the association was a breach of Defendant's fiduciary duty to the HOA;

(q)     Defendant's personal receipt of money from the association as reimbursement of Defendant's personal expenses was a breach of Defendant's fiduciary duty to the HOA;

(r)     Defendant was not entitled to any settlement credit or offset;

(s)     Defendant's indebtedness to the HOA included pre-judgment interest in the amount of $1,560.96 calculated at the rate of 5% per annum.[14]


*Nondischargeability under § 523(a)(4):  Debt Arising From Fraud or Defalcation in a Fiduciary Capacity.*

22.     11 U.S.C. §523(a)(4) provides that "A discharge under 11 U.S.C.§ 727 does not discharge an individual from a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny."

23.     Whether the actions of an individual were taken in a fiduciary capacity for the purposes of §523(a)(4) is determined by federal law.  *FNFS, Ltd. v. Harwood (In*

---

[14] Though items (l) through (s) were listed as conclusions of law in Exhibit 3, they are mixed questions of law and fact and are therefore subject to the restraint of collateral estoppel.  *Ackerman v. American Airlines, Inc*., 924 F. Supp. 749, 754 (N.D. Tex. 1995) *(citing United States v. Stauffer Chemical Co.*, 464 U.S. 165, 170–71 (1984)).  ["Collateral estoppel may apply to preclude re-litigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action."].

*re Harwood)*, 637 F.3d 615, 620 (5th Cir. 2011).

24.    However, "state law is important in determining whether or not a trust obligation exists." *Gupta v. Eastern Idaho Tumor Institute, Inc. (In re Gupta)*, 394 F.3d 347, 350 (5th Cir. 2004).

25.    The Fifth Circuit has discussed the concept of a fiduciary under §523(a)(4) in the following terms:

> [T]he concept of fiduciary under §523(a)(4) is narrower than it is under general common law.  Under §523(a)(4), "fiduciary" is limited to instances involving express or technical trusts.  The purported trustee's duties must, therefore, arise independent of any contractual obligation.  The trustee's obligations, moreover, must have been imposed prior to, rather than by virtue of, any claimed misappropriation or wrong.  Constructive trusts or trusts *ex malificio* thus also fall short of the requirements of §523(a)(4).
>
> . . . Statutory trusts, by contrast, can satisfy the dictates of §523(a)(4).  It is not enough, however, that a statute purports to create a trust:  A state cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms "trust" or "fiduciary."  Rather, to meet the requirements of §523(a)(4), a statutory trust must (1) include a definable res and (2) impose "trust-like" duties.

*Texas Lottery Comm'n v. Tran (In re Tran),* 151 F.3d 339, 342-43 (5th Cir. 1998).

26.    Thus, the trust relationship must exist prior to the creation of, and without reference to, the indebtedness in question.  *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1338 (5th Cir. 1980).

27.    "The Fifth Circuit recognizes that the 'technical' or 'express' trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law."  *FNFS, Ltd. v. Harwood (In re Harwood)*, 404 B.R. 366, 393 (Bankr. E.D. Tex. 2009) (citing *LSP Inv. Partnership v. Bennett (In re Bennett)*, 898 F.2d 779, 784-85 (5th Cir.), *cert. denied*, 510 U.S. 1011, 114 S.Ct. 601, 126 L.Ed.2d 566 (1993)).

28.    Thus, federal courts in this context have "not hesitated to conclude that debts arising from misappropriation by persons serving in a traditional, pre-existing fiduciary capacity, as understood by state law principles, are non-dischargeable." *Gupta*, 394 F.3d at 350.

29.    Accordingly, notwithstanding the "technical" or "express" trust requirement, "state law may create a fiduciary relationship whose breach leads to nondischargeability under §523(a)(4)." *Shcolnik v. Rapid Settlements, Ltd. (In re Shcolnik)*, 670 F.3d 624, 628 (5th Cir. 2012).

30.    Under Texas law, a fiduciary relationship exists between corporate officers or directors to the corporations they serve. *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576 (Tex. 1963); see also *Lifshutz v. Lifshutz*, 199 S.W.3d 9, 18–19 (Tex. App.– San Antonio 2006, pet. denied) ["Corporate officers owe fiduciary duties to the corporations they serve."].

31.    Texas law recognizes that "[t]he office of a corporation director or officer is more than nominal . . . ; it is their minimal duty and responsibility to protect the corporation against acts adverse to the interest of the corporation. . . ." *Holloway*, 368 S.W.2d at 580.

32.    In other words, this duty requires that corporate officers and directors act in the corporation's and shareholders' best interests. *Loy v. Harter,* 128 S.W.3d 397, 407 (Tex. App.– Texarkana 2004, pet. denied).

33.    In addition, one of the broad duties arising from the fiduciary obligation owed by a corporate officer or director to a corporation under Texas law is the duty of loyalty which "dictates that a corporate officer or director must act in good faith and must not allow his or her personal interest to prevail over the interest of the corporation. The duty of loyalty requires an extreme measure of candor, unselfishness, and good faith on the part of the officer or director." *Landon v. S & H Mktg. Grp., Inc.,* 82 S.W.3d 666, 672 (Tex. App. – Eastland 2002, no pet.) (citing *Holloway*, 368 S.W.2d at 577).

34.    It essentially requires officers and directors to refrain from usurping corporate opportunities for personal gain. *Loy,* 128 S.W.3d at 407; *Lifshutz,* 199 S.W.3d at 18.

35.    Another aspect of the fiduciary obligation of corporate officers and directors is to avoid corporate waste — that is, the diversion of corporate assets for improper or

**-17-**

unnecessary purposes. *Reed v. Linehan (In re Soporex, Inc.)*, 463 B.R. 344, 397 (Bankr. N.D. Tex. 2011) (citing 3A FLETCHER'S CYCLOPEDIA OF THE LAW OF CORPORATIONS §1102 (West 2011).

36.    These duties apply to officers of a Texas non-profit corporation. *Myer v. Cuevas,* 119 S.W.3d 830, 836 (Tex. App. – San Antonio 2003, no pet.); *Yeckel v. Abbott*, 2009 WL 1563587 at *9 (Tex. App. - Austin, June 4, 2009, pet. denied).

37.    Case law has determined that the fiduciary duties owed by corporate officers and directors to the corporation meet the standard for a technical trust and therefore satisfy the existence of a fiduciary capacity for the purposes of §523(a)(4). *Shcolnik*, 670 F.3d at 628; *Macris v. Saxton (In re Saxton),* 2011 WL 2293320, at *7 (Bankr. N.D. Tex., June 8, 2011) (*citing Assurance Systems Corp. v. Jackson (In re Jackson)*, 141 B R. 909, 915–16 (Bankr. N.D. Tex.1992); see also *Harwood*, 404 B.R. at 393.

38.    The Defendant in this case acted in a fiduciary capacity as to the Plaintiff for the purposes of §523(a)(4).

*Defalcation*

39.    Until recently, a defalcation under §523(a)(4) in this circuit required the establishment of a "willful neglect of duty" that was "essentially a recklessness standard." *Schwager v. Fallas (In re Schwager),* 121 F.3d 177, 185 (5th Cir. 1997).

40.    Willfulness in that context had been "measured objectively by reference to what a reasonable person in the debtor's position knew or reasonably should have known." *Harwood*, 637 F.3d at 624 (citing *Office of Thrift Supervision v. Felt (In re Felt)*, 255 F.3d 220, 226 (5th Cir. 2001).

41.    However, the United States Supreme Court has recently rejected an objective recklessness standard in favor of a heightened culpability standard for defalcation in this context.

42.    In a unanimous decision in *Bullock v. BankChampaign, N.A.*, ___U.S.___, 133 S.Ct. 1754, 185 L.Ed.2d 922 (2013), issued on May 13, 2013, the Supreme Court declared that "defalcation" for the purposes of §523(a)(4) "includes a culpable state of mind requirement" involving "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Id*. at 1757.

**-18-**

43.   According to *Bullock*, "where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] requires an intentional wrong." *Id*. at 1759.

44.   Such an intentional wrong encompasses not only conduct which the fiduciary knows is improper, but it also encompasses reckless conduct, such as when a fiduciary "consciously disregards (or is willfully blind to) a substantial and unjustifiable risk" that his conduct will result in a breach of fiduciary duty.  *Id*.

45.   In seeking to require a higher degree of fault for a finding of a defalcation, similar to its "statutory neighbors" of fraud, embezzlement and larceny listed in §523(a)(4), without imposing an actual requirement of specific intent to establish a defalcation, the Supreme Court adopted a standard of recklessness "of the kind set forth in the Model Penal Code §2.02(2)(c)."[15]

46.   Acknowledging that its adoption of this heightened level of culpability for defalcation cases under §523(a)(4) had been recognized earlier in bankruptcy jurisprudence from the First and Second Circuit,[16] the Court further noted with approval that this "severe recklessness" standard tracks the showing required to demonstrate scienter in federal securities cases.[17]

47.   Utilizing the MPC definition of recklessness and analyzing the defalcation standard to scienter determinations in federal securities cases is an effort to exclude that type of recklessness arising as a consequence of mere negligence or inadvertence.

---

[15]   Model Penal Code §2.02(2)(c) states that:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

MODEL PENAL CODE § 2.02(2)(c) (Thomson Reuters, Westlaw through 2012).

[16]   *See, e.g.*, *Rutanen v. Baylis (In re Baylis)*, 313 F.3d 9 (1st Cir. 2002); *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 69 (2nd Cir. 2007).

[17]   Scienter, in the context of securities fraud, is "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12 (1976).

48.    As recognized in securities law cases in the Fifth Circuit, this type of "severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involved not merely simple or even inexcusable negligence, but an extreme departure from the standard of ordinary care, and that present a danger of misleading buyers or sellers [of securities] which is either known to the defendant or is so obvious that the defendant must have been aware of it."  *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 430 (5th Cir. 2002).

49.    Thus, such a heightened culpability requirement will ensure that the "harsh sanction of non-dischargeability is reserved for those who exhibits some portion of misconduct." *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 68-69 (2nd Cir. 2007).

50.    Thus, Defendant's actions, as determined by the State Court, in:

    (1)    knowingly incurring attorney's fees, and litigation and settlement expenses by the HOA to oppose the homeowner's proper request for association documents;

    (2)    knowingly seeking and receiving improper personal benefits in the form of reimbursement of personal expenses; and

    (3)    knowingly seeking and receiving money as a personal benefit from a third-party contractor that was compensated by the HOA;

each constituted a defalcation by the Defendant while acting in a fiduciary capacity as to the Plaintiff.

51.    Thus, the aggregate debt owed by the Defendant to the Plaintiff, as established by the State Court Judgment, is therefore excepted from discharge in its entirety as a debt arising from a defalcation while acting in a fiduciary capacity pursuant to 11 U.S.C. §523(a)(4).

52.    To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

53.    An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 08/29/2014

-20-

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE